IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES MITCHELL | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:09-cv-00480 |
| | ) JUDGE HAYNES |
| BRIDGESTONE AMERICAS HOLDING, INC. | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM

Plaintiff, James Mitchell Jr., filed this pro se action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and Tennessee law against Defendants: Bridgestone Americas Holding, Inc. ("Bridgestone"), John McLaughlin and Missy Pierce. Plaintiff asserts claims for racial discrimination in his termination and subsequent retaliation after Plaintiff's successful arbitration hearing. Plaintiff also asserts state common law claims for wrongful discharge, retaliation, intimidating work environment, defamation, and intimidation under Tennessee law. In an earlier order, the Court dismissed all of Plaintiff's claims except for Plaintiff's Title VII discrimination claim against Defendant Bridgestone.[1] (Docket Entry No. 67, Order).

Before the Court is Defendant Bridgestone's motion for summary judgment (Docket Entry No. 69) contending that Plaintiff's proof fails to establish a *prima facie* showing of racial discrimination because Plaintiff and his cited comparable white employee Decie Huffaker are not

---

[1] "Bridgestone Americas Tire Operations, LLC was formerly known as Bridgestone/Firestone North American Tire, LLC, and is wholly owned by Bridgestone Americas Holding, Inc., the entity named as the defendant in this case." Plaintiff is employed by the Bridgestone Americas Tire Operations, LLC, not Bridgestone Americas Holding, Inc. (Docket Entry No. 70, Defendant's Memorandum in Support of Summary Judgment, at p. 2).

similar situated employees. Bridgestone also asserts if Plaintiff can make a *prima facie* showing of racial discrimination, then Bridgestone had a legitimate non-discriminatory reason for firing Plaintiff.

Plaintiff filed a late response to Defendant's motion for summary judgment,[2] (Docket Entry No. 62, Plaintiff's Filing), but submitted numerous documents that as a pro se litigant, the Court considers on whether Plaintiff's proof creates a material factual dispute.

For the reasons set forth below, the Court concludes that based upon the arbitrator's findings and the state labor agency's findings, material factual disputes exist on the reasons for Plaintiff's termination. Those disputes preclude an award of summary judgment.

## 1. FINDINGS OF FACT[3]

Bridgestone hired Plaintiff at its LaVergne, Tennessee facility, (Docket Entry No. 71, Affidavit of Missy Pierce, at ¶ 2), to read gauges that measure dust emissions and record his observations on a log during his shift. Id. at ¶ 4. Defendant's facility is regulated by Tennessee's Department of Environment and Conservation (TDEC) and must maintain daily readings of its 13 photohelic gauges on a log. Id. at ¶ 3.

Following an internal audit of the daily logs in summer of 2007, Defendant found that over a period of weeks, Plaintiff's recorded readings of the gauges in the logs did not reflect the

---

[2] Under Local Rule 56.01, Plaintiff had 21 days to file a response to a motion for summary judgment.

[3] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, under Supreme Court holdings, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict. Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986). Under the applicable law, the Court concludes that there are material factual disputes regarding Defendant's legitimate non-discriminatory rationale for terminating Plaintiff. Thus, this section does not constitute findings of fact under Fed. R. Civ. P. 56.

2

gauges' exact same reading. Id. at ¶ 5. Plaintiff worked Monday through Friday and the log would show fluctuations over the weekend and return to the previous identical numbers when Plaintiff returned Monday. Id. The daily logs are expected to "show daily differences in the readings, even if the difference is miniscule." Id.

Defendant later discovered that there were fifty three (53) days when Plaintiff's name was signed to the daily logs despite his record reflecting that he was on vacation or sick leave. Id. at ¶ 6. On August 28, 2007, Defendant Bridgestone interviewed Plaintiff about these gauge readings, but Plaintiff "could not explain those readings." Id. at ¶ 7. Defendant decided to terminate Plaintiff with two day notice. Id. On August 30, 2007, Defendant met with Plaintiff during Bridgestone inquiry during which Bridgestone asserts Plaintiff admitted to completing the logs for the days when he was absent "because his supervisor had told him to do it." Id. at ¶ 8. Plaintiff was discharged that day. Id. Defendant's evidence suggests that Plaintiff admitted to falsifying the recordings on the days he was absent. Id. at ¶ 8. Defendant also maintains that Plaintiff was terminated for his admission as well as the fact that "the gauge readings during his shifts when he was at work show[ed] the same readings over days and weeks." Id.

During its inquiry, Defendant also interviewed Decie Huffaker. Id. at ¶ 9. Huffaker, a salaried supervisor would occasionally substitute for Plaintiff's supervisor. Id. Huffaker, unlike Plaintiff, was not a member nor a union nor subject to a collective bargaining agreement. Id. Huffaker admitted to completing some of the suspect logs and falsifying Plaintiff's signature and other employees' signatures. Id. at ¶ 10. Plaintiff contends that Huffakers's admissions account for the log entries under his signature on the days when he was not working. (Docket Entry No. 1, Complaint at p. 2). Following Huffaker's admission, Cheryl Johnson, Plaintiff's supervisor met with Huffaker and decided to terminate Huffaker's employment for falsification of company

documents. (Docket Entry No. 71, Pierce Affidavit at ¶ 10). Falsification is grounds for immediate termination under Defendant's company policy. Id. at ¶ 7. At the LaVergne Plant, Bridgestone explains that retirement-eligible employees may retire rather than be terminated for a dischargeable offense. Id. at ¶ 12. Huffaker was eligible to retire when he was facing termination and elected to retire. Id. at ¶¶ 13, 14. Plaintiff, however, was ineligible to retire at that point in time. Id. at ¶ 13.

Plaintiff was the only African-American among the fifteen employees responsible for checking the photohelic gauges, (Docket Entry No. 62-1, Plaintiff's Filings, at pp. 13-16), and was the only employee interrogated and terminated. (Docket Entry No. 1, Verified Complaint, at p. 2).

In its report to the Tennessee Department of Labor and Workforce Development ("TDOLWD") on Plaintiff's termination, Bridgestone stated that:

> "Mr. Mitchell repeatedly and knowingly falsified these records by providing false readings from the gauges he had not checked. Upon investigation it was determined that Mr. Mitchell signed the sheets indicating he checked the gauges on approximately 90 different occasions when he was absent from work. **Mr. Mitchell states his Supervisor instructed him to falsify the records; however when Mr. Mitchell completed the records and signed them as true and accurate over the course of several years, Mr. Mitchell knowingly falsified company documents. Mr. Mitchell was discharged for falsification of company records.**

(Docket Entry No. 1-2, Request for Separation Information, at p. 12) (emphasis added).

After a hearing, the TDOLWD's findings[4] rejected Bridgestone's explanation for terminating Plaintiff.

---

[4] State administrative agencies' unemployment compensation decisions can be considered as evidence, but a court cannot defer to those findings in a Title VII action. See Galbraith v. Northern Telecom, Inc., 944 F.2d 275, 281 (6th Cir. 1991).

4

FINDINGS OF FACT: The claimant's most recent employment prior to filing this clam was with Bridgestone/Firestone where he worked as maintenance/electrician from January 7, 1993 until August 30, 2007. The company policy calls for the termination of an employee for falsification of company documents. The claimant was aware of the company policy. **On August 28, 2007, the claimant was called into a meeting and accused of falsifying instruments readings on photoheldic gauges that are used to collect and measure dust in the facility. The claimant did not falsify the instruments readings on those gauges and denied accusations. Despite the claimant's denial, on August 30, 2007 the claimant was terminated for allegedly falsifying company documents. After the claimant's termination and during an arbitration hearing, it was learned that the claimant's supervisor had actually written the claimant's name on several of the falsified forms while the claimant was off work on vacation. The claimant has since won an arbitration hearing and been recommended for reinstatement to get his job back.**

CONCLUSIONS OF LAW: **The Appeals Tribunal finds that the claimant is eligible to receive unemployment compensation benefits.** The issue is whether the claimant was discharged for work related misconduct under T.C.A. 50-7-303(a) (2). Misconduct is intentional behavior or conduct by an employee that material breaches a duty the employee owes to the employer. It is also behavior that shows a willful and a deliberate disregard against the employer's interests, or deliberately violates or disregards the standards of behavior that the employer has a right to expect of the employee. The Appeals Tribunal finds the evidence is not sufficient to establish misconduct as defined by the statute because the claimant did not willfully or deliberately violate the company policy. While the claimant owed the duty to abide by the company policy and procedures that prohibits employees from falsifying company documents, there is no evidence in the record that the claimant violated the policy. The employer failed to appear at the hearing and has failed to meet it burden of proof in this discharge case. The record fails to establish work related misconduct within the meaning of the statute.

(Docket Entry No. 62-1 at 37-38) (emphasis added).

As noted above, after an arbitration hearing, Plaintiff was reinstated and the Arbitrator's findings[5] were as follows:

---

[5] Court can consider arbitration findings in a civil rights action. McDonald v. City of West Branch, Mich., 466 U.S. 284, 292 n.13 (1984); Walker v. Ohio Dept. of Rehabilitation & Correction, 241 Fed. Appx. 261, 269 (6th Cir. 2007); Parries v. Makino, Inc., 122 Fed. Appx. 826, 832 (6th Cir. 2005).

5

**I conclude the Company lacks just cause to discharge Mitchell. Although I agree with the Company that many of the signatures on the 53 documents which it claims that Mitchell falsified look very much like the signatures which Mitchell placed on hundreds of other similar documents from 2005 to 2007, I conclude that it is impossible to determine with sufficient certainty on the basis of the record evidence that they are, in fact, not forgeries. Such a conclusion is facilitated by the physical simplicity of Mitchell's signature, the ease with which it can be mimicked or forged, and the acknowledged involvement of his Supervisor, Deci Huffaker, in the forgery of the signatures of several bargaining unit employees including that of Mitchell.** Lee testified that Huffaker admitted to him that on occasion he lacked filled-out forms and needed numbers to turn in to the Company and, ultimately, to the State of Tennessee. Lee also testified that Huffaker admitted that he did not sign his own name to the documents on which he placed phony numbers, but rather, that he admitted to using "a number of names" includes that of Mitchell. Given Mitchell's long-term and essentially blemish free employment and the acknowledged involvement of his Supervisor in the fraudulent forging of Mitchell's signature on important Company documents, I conclude that there is insufficient evidence on the record of this case upon which to conclude that Mitchell knowingly falsified Company documents so as to provide just cause for his immediate discharge.

**The Company argues that Mitchell admitted that his signature appeared on the 53 documents in question. It is not clear on this record whether Mitchell actually admitted to having signed the documents in question or that he merely admitted that the proffered signatures "look like mine." The company relies on Mitchell's initial acceptance of the proffered signatures as his own and suggests that his later reversal is based only on Mitchell's having learned that he was suspected of having falsified Company documents. I conclude, however, that it is reasonable—given the involvement of Supervisor Huffaker in forgeries of Mitchell's signature—that Mitchell would have believed that the signatures which the Company first produced at the investigatory meeting of August 28, 2007 were, indeed, his own.** It is reasonable for him to have considered the possibility that the signatures were not his only when he learned of the true purpose of the investigation.

**The pattern of Mitchell's data recordings is troubling. It is at least some evidence that Mitchell was not performing a crucial element of his job and was, instead, faking data to avoid making his required rounds among the gages. Yet the Company does not cite such pattern recordings as a reason for his discharge.** In contrast to the obvious motivation Mitchell could have had not to make his rounds on days when he was at work, is the utter lack of motivation he seems to have had to sign off on phony data on days when he was not at work. This lack of motivation is strong evidence that Mitchell did not falsify the Company documents as the Company alleges.

6

The Company places great stress on Mitchell's refusal to point out to the Arbitrator his "true" signature on any one of the hundreds of documents on which he recorded the gage readings and which he signed. The Company argues that a comparison between a signature which Mitchell acknowledges at hearing to be his own and those signatures which he denies to be his own on the 53 documents at issue would show them to be identical and, thus, such a comparison would prove that he falsified the 53. I disagree. My examination of the signatures on hundreds of documents shows that what passes for Mitchell's signature on these forms is inconsistent. Mitchell's hesitation -- indeed, refusal – to identify a single signature as his own could reasonably have resulted in his identification of a forgery as his own and, thus, permit the Company a second chance to challenge his veracity with respect to identification of his own signature.

Award:

The Company did not have just cause to discharge Jimmie Mitchell.

(Docket Entry No. 621, Arbitration Opinion and Award, at 9-11) (emphasis added).[6]

## 2. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

---

[6] Court can consider arbitration findings in a civil rights action. McDonald v. City of West Branch, Mich., 466 U.S. 284, 292 n.13 (1984); Walker v. Ohio Dept. of Rehabilitation & Correction, 241 Fed. Appx. 261, 269 (6th Cir. 2007); Parries v. Makino, Inc., 122 Fed. Appx. 826, 832 (6th Cir. 2005).

7

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). But <u>see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

8

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]...must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

9

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
>              \*    \*    \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added). It is likewise true that:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.
>
> It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

10

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the

respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

For a *prima facie* showing of racially discriminatory termination, Plaintiff must present proof: (1) that he is a member of a protected group; (2) that he was subject to an adverse employment decision; and (3) that the employer continued to seek application for the termination position. Potter v. Goodwill Indus., 518 F.2d 864 (6th Cir. 1975). Later, in Shah v. General Electric Company, 816 F.2d 264 (6th Cir. 1987), the Sixth Circuit reiterated these requirements:

> The three elements necessary to establish a prima facie case of discriminatory discharge were specifically enumerated by this court in Potter v. Goodwill Industries, 518 F.2d 864 (6th Cir.1975). A plaintiff must show "[1] that he is a member of a class entitled to the protection of the Civil Rights Act, [2] that he was discharged without valid cause, and [3] that the employer continued to solicit applications for the vacant position." Id. at 865. Failure to prove any one of these elements by a preponderance of the evidences mandates a dismissal of the plaintiff's suit.

Id. at 268.

Yet, in Beaven v. Commonweath of KY, 783 F.2d 672 (6th Cir. 1986), the Sixth Circuit reversed an award of summary judgment for plaintiff's failure to prove the third element where there is proof of disparate treatment.

12

> Plaintiff Beaven contends on appeal that the district court erroneously relied on Potter to conclude that a prima facie case of discriminatory discharge must always show that the employer continued to seek applications after plaintiff's dismissal. We agree with this contention. . . . Plaintiff Beaven contends that he presented evidence showing he belonged to a protected class; had performed his job satisfactorily until his firing, and was dismissed from his job. Plaintiff contends that he also submitted evidence that similarly situated white program advisers who committed the same infractions had been given warnings or received hearings and were not fired. In our view, if plaintiff presented this evidence of disparate treatment, it is sufficient to give rise to an inference of discrimination and constitutes a prima facie case of discriminatory discharge.
>
> In sum, the district court erred in granting summary judgment on the ground that plaintiff failed to show the defendants sought to fill his vacated position after he was fired.

Id. at 676, 677.

Plaintiff's proof is that he was the only employee interrogated and subsequently fired among the fifteen maintenance employees who were responsible for signing these documents, including Huffaker. Plaintiff is also the only African-American among those employees. Plaintiff also cites Decie Huffaker as a similarly situated white employee, who falsified documents, Bridgestone allowed Huffaker to retire, but terminated Plaintiff. Defendant responds that Huffaker was a supervisor, but Plaintiff's supervisor terminated Huffaker. The findings of the arbitration and TDOL are proof that he was discharged without cause. Alone or in combination, these facts viewed in a light most favorable to Plaintiff, as required in this motion, can constitute proof of disparate treatment.

As to the Defendant's proof of a legitimate reason for the termination, in Kline v. Tennessee Valley Authority, 128 F.3d 337 (6th Cir. 1997), the Sixth Circuit stated:

> Hicks effectively rejected both the "pretext only" and "pretext plus" approaches to employment discrimination cases and adopted the "permissive pretext" approach.
>
> The Supreme Court also rejected the "pretext plus" approach. The Court noted:

13

> <u>The fact finder's disbelief of the reasons put forward by the
> defendant (particularly if disbelief is accompanied by a suspicion
> of mendacity) may, together with the elements of the prima facie
> case, suffice to show intentional discrimination.</u> Thus, rejection of
> the defendant's proffered reasons will permit the trier of fact to
> infer the ultimate fact of intentional discrimination, and the Court
> of Appeals was correct when it noted that, upon such rejection,
> "[n]o additional proof of discrimination is required."

<u>Id.</u> at 344 (emphasis added).

Based upon Plaintiff's proof of two administrative findings that the Defendant's stated reasons for Plaintiff's termination are unsupported, the Court concludes that material factual disputes exists on whether the Defendant had a legitimate, non-discriminatory reason for Plaintiff's termination.

For the reasons discussed above, Defendant's motion for summary judgment should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the ___8th___ day of September, 2011.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　WILLIAM J. HAYNES, Jr.
　　　　　　　　　　　　　　　　　　　United States District Judge